## MÁS ET AL. *v.* BORINQUEN SUGAR COMPANY.

### Apelación procedente de la Corte de Distrito de Mayagüez.

#### No. 771.—Resuelto en abril. 26, 1912.

DESAHUCIO—PRIMERA COMPARECENCIA—PRÓRROGA.—La facultad de aplazar un señalamiento es inherente en las cortes de justicia, y las disposiciones del artículo 4 de la Ley de Desahucio de 1905 no debieran interpretarse tan restrictivamente que prohiban a una corte de distrito el aplazar la primera comparecencia en un juicio de desahucio, para un término posterior al de 10 días indicado en dicho artículo.

ID.—PRIMERA COMPARECENCIA—APLAZAMIENTO.—El tener el abogado de una parte ocupaciones perentorias en una corte de distrito en otro sitio no es razón suficiente por sí sola para pedir a una corte que aplace la primera comparecencia en un juicio de desahucio.

ID.—FACULTAD DISCRECIONAL—APELACIÓN.—Cuando una corte rehusa ejercer su facultad discrecional para aplazar un señalamiento por creer que carece de facultades para ello, tal negativa a ejercer dicha facultad puede ser revisada en grado de apelación.

ID.—ERROR PERJUDICIAL.—Aun cuando una resolución sea errónea, si no perjudica a la parte contra quien se dicta sentencia, tal sentencia no será revocada si el error no es perjudicial.

ID.—ABUSO DE DISCRECIÓN—INJUSTICIA.—Existe abuso de discreción por parte de un tribunal cuando claramente resulta que se ha cometido una injusticia, y en este caso el Tribunal Supremo resolvió que la resolución de la corte sentenciadora negando la suspensión de la primera comparecencia bajo las circunstancias reveladas en la segunda moción de la demandada, constituye una injusticia, y si se aprecia que dicho tribunal hizo uso de su facultad discrecional, entonces sería también un abuso de tal facultad.

Id.—Enmiendas a las Alegaciones—Excepciones Previas.—Por regla general al ser declarada con lugar una excepción previa, el tribunal debe permitir a la parte que enmiende su alegación, y a veces cuando una parte solicita permiso para enmendar sus alegaciones, puede la corte exigirle que presente dentro de un término razonable su proyecto de enmienda para examinar si constituye o nó una buena alegación. Y en este caso concreto, la negativa a la parte apelante para enmendar su alegación constituye un error, si, como parece, la corte creyó no tener facultad para permitir la enmienda y de otro modo, un abuso de discreción.

Id.—Interpretación de Ley—Ley Anticonstitucional—Absurdos.—Cuando la interpretación literal del texto de una ley conduce a un absurdo y haría posiblemente anticonstitucional dicha ley, la corte está en el deber de apreciar por cualesquiera medios que tenga a su alcance cuál fué la intención de la Legislatura.

Id.—El artículo 9 de la Ley de Desahucio de 1905 es discutido e interpretado en la opinión.

Id.—Falta de Pago del Arrendamiento—Defensas del Demandado—Recibo.— Únicamente en los casos en que el demandado en un juicio de desahucio por falta de pago de arrendamiento alegue como defensa el haber pagado, es que son aplicables los preceptos del artículo 9 de la Ley de Desahucio de 1905, pero en cualquier otro caso son admisibles todas las defensas legales y todos los medios de prueba que legalmente pueda proponer el demandado, y el interpretar dicho artículo en el sentido de que en todas las acciones de desahucio establecidas por falta de pago, la única defensa del demandado es la presentación del recibo o cualquier otro documento en que conste haberse verificado el pago, sería ir contra la intención de la Legislatura.

Id.—Jurisprudencia del Tribunal Supremo de España—Ley Tomada del Código de Enjuiciamiento Civil Español.—La aprobación por la Legislatura puertorriqueña de la Ley de Desahucio que es una copia sustancial de los artículos 1559 y siguientes del Código de Enjuiciamiento Civil Español, trae consigo la presunción de que nuestra Legislatura tuvo la intención de adoptar dicha ley con la interpretación que le ha dado el Tribunal Supremo de España.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Alvarez Nava y Domínguez.*

Abogados de los apelados: *Sres. Juan Hernández López y Arturo Aponte, Jr.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

En 3 de julio de 1911, los demandantes iniciaron una acción de desahucio contra la corporación demandada. El mismo día la corte procedió a señalar el 8 del propio mes para que la demandada hiciera su primera comparecencia. Se hizo a ésta el emplazamiento de la acción que contra ella se había establecido el día 3 de julio en San Juan. En 7 de

julio la demandada presentó una moción solicitando la suspensión de la primera comparecencia señalada y que se hiciera el señalamiento del caso en una fecha posterior. Se alegó en dicha moción que los abogados de la demandada eran los que componen la Sociedad de Alvarez Nava y Domínguez, y que el único representante de esa sociedad que entonces se encontraba en San Juan, era el abogado Jorge Domínguez, y debido a tener señalada la vista de un caso necesariamente para la misma fecha en San Juan, se le hacía imposible comparecer en dicha fecha en la Corte de Humacao. La corte resolvió que no podía suspenderse la vista señalada para la primera comparecencia en vista de las terminantes prescripciones del artículo cuarto de la ley de desahucio aprobada en 1905, que prescribe de modo categórico, que la primera comparecencia tendrá lugar dentro de los diez días después de empezar el pleito. En otras palabras, que la corte no ejercitó discreción alguna.

El día 8 de julio que fué el señalado para la primera comparecencia presentó la demandada por medio de sus abogados una segunda moción de suspensión en la que éstos expresaron más detalladamente el motivo de la obligación que tenían de permanecer en San Juan; que la corporación demandada fué emplazada el día 3 de julio y como el caso estaba señalado por el 8, únicamente tenía cuatro días para preparar toda la complicada defensa de que era objeto este pleito, y siendo la distancia de San Juan a Humacao de treinta millas, la demandada tenía derecho por lo menos a dos días más; que debido a la premura y festinación con que fué señalada esa comparecencia el abogado no había tenido tiempo material, ni trámite legal para preparar su defensa y alegaciones necesarias a la protección de los intereses de la demandada; que si la vista de la comparecencia se señalara para cualquier día hasta el 13 del corriente mes, dicho señalamiento estaría dentro del término de diez días fijados en la ley especial de desahucio, sin lesionarse con ello los derechos de nadie ni infringirse ninguna disposición legal. Esta moción se acompañó de un *affi-*

*davit* en el que igualmente expresa el abogado, que debido a esta gran premura le había sido imposible poner en conocimiento de otro abogado los hechos relativos a la defensa.

El mismo día 8 de julio, la corte negó la moción por el fundamento de que no se ajustaba a lo dispuesto en el artículo 202 del Código de Enjuiciamiento Civil; que de la moción no aparecía que se hubieran hecho las diligencias suficientes para conseguir la prueba que debía someterse a la corte, y que ni de la moción ni del *affidavit* aparecía el mérito de la prueba. Entonces la parte demandada contestó la demanda en la que primeramente negó que hubiere infringido o quebrantado alguna de las cláusulas o estipulaciones contenidas en el contrato de arriendo; y en segundo lugar, negó de modo específico que la corporación demandada hubiera dejado de pagar a los demandantes el semestre que por concepto de arrendamiento venció en 26 de junio, 1911; y como materia nueva de defensa alegó la demandada que en 30 de junio de 1911, y a eso de las dos de la tarde, se presentó en la oficina de dicha compañía el Sr. Manuel Soto, situada en la calle de Allen de San Juan, como pretendido mandatario del demandante Pedro Más, y presentó a un empleado de la compañía demandada, José Vilá, un recibo por el canon correspondiente al semestre entonces vencido por valor de $750; que el Sr. Vilá procedió a extender un cheque por dicha cantidad, con cargo al Royal Bank of Canada, en pago de dicho arrendamiento; que tan pronto se extendió el cheque notó el Sr. Vilá que el Sr. Rafael Fabián, Tesorero de dicha corporación y que tenía su oficina casi en frente de la de la compañía no se hallaba en ella; en la imposibilidad de obtener su firma para el cheque, y enterado el Sr. Vilá de que el Sr. Fabián volvería dentro de media hora, así se lo manifestó al Sr. Soto, requiriéndole para que transcurrido ese tiempo volviese a recoger dicho cheque que ya estaría firmado por el Sr. Fabián, única persona con autoridad para ello; que el Sr. Soto accedió y estuvo conforme con lo solicitado por el Sr. Vilá y prometió volver al poco tiempo después que evacuase una diligencia en la

Corte Suprema de Puerto Rico; que el Sr. Soto no volvió en ese día, y con tal motivo el Sr. Vilá se trasladó al otro día, primero de julio, a la oficina del Sr. Soto a requerirle para que entregase el recibo y recogiese el cheque, a lo que se excusó de una manera vaga el Sr. Soto; y habiendo transcurrido dos días, el día 3 del mismo mes, volvió el Sr. Vilá donde el Sr. Soto a hacerle entrega de dicho cheque, a lo que se negó Soto manifestando que ya había devuelto el referido recibo, y que no tenía autoridad para recibir dicho cheque ni su montante, que la corporación demandada estuvo siempre y lo está hoy dispuesta a satisfacer el referido arrendamiento, y si no pudo hacer efectivo el cheque ese día fué por la negligencia e impropia conducta del pretendido mandatario de uno de los demandantes al no cumplir su promesa de volver el mismo día, y negarse a verificarlo y a aceptar dicho cheque en los días 1 y 3 de julio último.

Los demandantes presentaron una excepción previa a la contestación, formulando también otra excepción previa por separado a la nueva materia contenida en la contestación, o sea, a la parte donde se describen los hechos ocurridos entre el Sr. Soto y el Sr. Vilá; fundando dicha excepción previa en el artículo 9 de la Ley de Desahucio. La corte ordenó la eliminación de la nueva materia alegada en la contestación por los motivos expresados en esta excepción previa especial; y después de haber declarado la corte con lugar la excepción previa, la demandada solicitó permiso para hacer enmiendas que le fué negado, habiendo dicha demandada tomado excepción de esa resolución de la corte.

Las palabras del artículo 4 de la ley a que se ha hecho referencia son como sigue:

"Se promoverá el juicio por medio de demanda redactada conforme a lo prescrito para el juicio ordinario en el Código de Enjuiciamiento Civil, y presentada aquélla se mandará convocar al actor y al demandado para una comparecencia que deberá celebrarse dentro de los diez días siguientes al en que se presente la reclamación." Leyes de la Sesión de 1905, pág. 287.

Ahora bien, aunque el estatuto dispone que el señalamiento de la primera comparecencia se hará dentro de diez días, la corte no está privada de ejercitar su discreción para prorrogar el señalamiento. La facultad de suspender un señalamiento es inherente en las cortes, y el poder judicial reside en las cortes de Puerto Rico con arreglo a la sección 33 de la Ley Orgánica. Pueden surgir causas de enfermedad, muerte, ausencia, incapacidad u otras semejantes, por las que se haga indispensable o esté justificada la suspensión de una vista. (*People* v. *Logan*, 4 Cal., 188.) No ha de entenderse que las prescripciones del artículo 4°. son de tal modo imperativas que no permitan a las cortes ejercitar su sana discreción. Además, en el presente caso se comenzó el pleito en 3 de julio y se señaló la vista para el 8. La corte pudo haber hecho el señalamiento del caso para cualquier fecha que no fuera posterior al 13 de julio, y estar, sin embargo, dentro de la letra de la ley. Si hubiera la corte ejercitado su discreción al negarse a conceder la suspensión solicitada en la primera moción que presentó la demandada, estaríamos en condiciones de poder expresar ahora si abusó dicha corte o nó de su discreción. El abogado solamente se fundó en el simple pretexto de tener necesidad de asistir a una vista en otra corte el mismo día. El mero hecho de tener ocupaciones en otras cortes no es una razón suficiente. Las cortes deben ser, y generalmente son, deferentes con los abogados, pero el hecho de que esto no suceda no constituye un error. Los abogados que residen en una población y desean ejercer su profesión en otra lo hacen con algún riesgo, y es de esperarse que en casos de urgencia hagan lo que últimamente hizo el abogado en este caso, o sea, encargar del asunto a otro abogado. Pero, según hemos visto la corte no hizo uso alguno de su facultad discrecional, constituyendo esto un error. La negativa de la corte sentenciadora a ejercitar la discreción que tenía—negativa que fundó en la carencia de facultad—puede ser considerada en una apelación. (*Fajardo Development Co.* v. *Sucesión Morfi*, 17 D. P. R., 1120; *Van Epps* v. *Redfield*, 34 L. R. A.,

360; *Leonard* v. *Green,* 30 Minn., 496; *Seibert* v. *Minneapolis etc. Ry. Co.,* 58 Minn., 58; *Thompson* v. *Warren,* 45 S. E., 912; *Palliser* v. *Home Telephone Co.,* 58 So., 499; *Moran et al.* v. *Bentley,* 42 Atl., 1013; *Sanders* v. *German Fire Ins. Co. of Indiana,* 105 N. W., 787; *Livingston* v. *Taylor,* 63 S. E., 694; 3 Cyc., 326.)

Se ha resuelto en algunos casos que si de ejercitarse la discreción ésta resultara necesariamente contraria a lo solicitado, la corte de apelación no revocará la sentencia. (*Polhemus* v. *Ann Arbor Savings Bank,* 27 Mich., 44, y casos de la pág. 50.)

En otras palabras, que aun cuando exista error, si éste no perjudica a la parte contra quien se dicta la sentencia, esta corte considerará que tal error no es perjudicial. Aparece, sin embargo, de la demanda presentada en este caso, que la demandada tenía un arrendamiento de consideración del cual disfrutaba desde hacía algunos años. Dicho arrendamiento había de terminar en el año 1927. El abogado de la demandada compareció de buena fe ante la corte solicitando se le concediera un término razonable para preparar su defensa, siendo el de cinco días que se le concedió muy corto en vista de las circunstancias del caso. La corte pudo prorrogar ese término aun interpretando estrictamente la ley. Por lo general, las cortes son refractarias a decretar la nulidad de los contratos y los procedimientos subsiguientes que prácticamente anularon todas las defensas, demostraron que la demandada resultó perjudicada por no haber la corte ejercitado su discreción.

No puede considerarse que la corte ejercitara su discreción al resolver la moción de julio 8. Aunque el apelante hizo grandes esfuerzos con el fin de que la corte hiciera uso de su facultad discrecional, ésta, sin embargo, fundó su resolución en otros motivos que tenían por base una mala inteligencia de la solicitud presentada por el apelante. La demandada no pedía que se ordenara la suspensión para adquirir testigos y no se fundaba en ninguno de los preceptos contenidos en el

artículo 202 del Código de Enjuiciamiento Civil. La deman-
dada de buena fe trataba de obtener una oportunidad conve-
niente para preparar su defensa, y habiendo solicitado la
suspensión del caso le fué imposible conseguir de la corte que
ejercitara su discreción con respecto a este particular.

Aun cuando se hubiera considerado, sin embargo, que la
acción tomada por la corte en julio 8 constituyó un ejercicio
de su discreción, estaríamos obligados a resolver que hubo
abuso de discreción. En realidad el apelante sólo había te-
nido cuatro días para preparar su defensa. Y aún en el caso
de que se siguiera estrictamente la letra de la ley, la corte, no
obstante, hubiera podido señalar la comparecencia para el día
13 de julio y no se hubieran perjudicado los demandantes por
una demora de 48 horas, que fué todo lo que últimamente pi-
dió la demandada. Se ha resuelto en California que hay
abuso de discreción cuando claramente resulta que se ha co-
metido una injusticia. (*Clavey* v. *Lord,* 87 Cal., 419. Véase
también el caso de *Sharon* v. *Sharon,* 75 Cal., 48.) El tiempo
que en realidad se concedió a la demandada constituyó una in-
justicia.

Después de desestimarse la excepción previa que se for-
muló a la materia especial alegada por la demandada, ésta
pidió permiso para hacer enmiendas, y según hemos visto, la
corte negó la solicitud. A veces la corte puede exigir a la par-
te que propone una enmienda que exprese dentro de un tiempo
razonable la naturaleza de la enmienda que se propone hacer,
y permitir o nó que se haga dicha enmienda, según que ésta
pueda constituir o nó una buena alegación. Sin embargo, por
lo general al declararse con lugar una excepción previa debe
permitirse que se haga la enmienda. (*The Fajardo Develop-
ment Co.* v. *Sucesión Morfi,* 17 D. P. R., 688; *People* v. *Mt.
Shasta Mfg. Co.,* 107 Cal., 258.)

La excepción previa se formuló el mismo día que la contes-
tación. La demandada creyó que tenía una buena defensa y
no se trataba de ninguna cuestión sobre procedimientos dila-

torios, por lo que la corte debió haber concedido un tiempo razonable, aun cuando éste fuera de pocas horas, para que de este modo pudiera la demandada preparar su defensa. Creemos que aunque la corte hubiera estado justificada en su negativa de aplazar los procedimientos, el no haber concedido la enmienda bajo las circunstancias de este caso habría constituído un abuso de discreción.

Resulta, sin embargo, que la corte no ejercitó su discreción. Siguiendo lo indicado por la demandante en su excepción previa, la corte ordenó la eliminación de la nueva materia alegada por la demandada, fundándose en que el artículo 9 de la ley de desahucio prohibía la presentación de ninguna prueba en un caso como el presente que no fuera un recibo o cualquier otro documento en que conste haberse verificado el pago.

El artículo 9 es como sigue:

"Cuando la demanda se funde en falta de pago del canon o precio convenido en un contrato, no se admitirá al demandado otra prueba que la del recibo o cualquier otro documento en que conste haberse el pago verificado.

"Las pruebas de ambas partes comprenderán los hechos fundamentales de la cuestión principal."

Nos inclinamos a convenir con el apelante en que una ley como esta, que en los Estados Unidos en casos de acciones establecidas por falta de pago limitaran las defensas a la presentación en evidencia del recibo u otro documento que acredite el pago, no constituiría debido procedimiento de ley. No es necesario discutir en este caso ninguna cuestión constitucional porque no creemos que la legislatura tuviera la intención de limitar el derecho. Resolver otra cosa sería proporcionar al propietario una oportunidad, ya negándose a aceptar el canon cuando estuviera vencido, o estableciendo una acción prematura, para anular las defensas, terminando así, de modo arbitrario, el contrato que existía. Un extraño podría entrar en posesión de la propiedad de otra persona alegando simplemente la propiedad de la misma, el arrendamiento y

falta de pago, y no podría el arrendatario negar el arrenda-
miento ni la propiedad.  Cuando las palabras de un estatuto
conducen a un absurdo como el presente al interpretarlas li-
teralmente, y quizás a resultados anticonstitucionales, la corte
está en el deber de resolver por cualesquiera otros medios
que tenga a su alcance, cuál fué la intención de la legislatura.
(*Church of the Holy Trinity* v. *U. S.*, 143 U. S., 457; *Oates* v.
*National Bank*, 100 U. S., 239; *Interstate Drainage & Invest-
ment Co.* v. *Board of Commissioners of Freeborn Co., Minn.*,
158 Fed. Rep., 270.)

Creemos que las palabras de dicho artículo 9 se limitan
solamente a los casos en que el demandado combate el hecho
relativo a la falta de pago y funda su defensa en el hecho del
pago.  Esto parece resultar en parte de las palabras "en que
conste haberse el pago verificado."  A nada conduciría el tra-
tar de probar el pago si la defensa fuera, por ejemplo, que el
canon estipulado no estaba vencido, o que existía un *estoppel*
o bien que el demandado había sido relevado debidamente de
su obligación.  El artículo continúa como sigue: "Las pruebas
de ambas partes comprenderán los hechos fundamentales de
la cuestión principal."  Cuando la defensa principal es al-
guna otra que no sea la del pago, los hechos fundamentales
que han de probarse no podrían fácilmente ser ni un recibo
u otro documento en que conste que se ha hecho el pago.

La interpretación a que hemos llegado parece deducirse
de la definición de la acción de desahucio.  La sección 1ª. dice
lo siguiente:

"Tienen acción para promover el juicio de desahucio los dueños
de la finca, los usufructuarios y cualquiera otro que tenga derecho a
disfrutarla, y sus causahabientes."

Ninguna persona tiene derecho al goce de una propiedad
que ha arrendado a otra, no habiendo el arrendatario come-
tido acto alguno que lleve consigo la terminación del contrato
de arrendamiento.  Si el arrendatario puede probar que no
ha infringido su contrato, o que el arrendador está impedido

por sus propios actos de alegar el incumplimiento del mismo, no puede considerarse que el propietario tiene derecho al goce de la propiedad, no procediendo por tanto la acción de desahucio. Para probar que la acción no procede debe el arrendatario si su prueba no se funda en el pago, estar en condiciones de poder presentar sus otras pruebas, y deberá ser oído en juicio.

Las mismas consideraciones se infieren del artículo 1457 del Código Civil. Con arreglo a dicho artículo el arrendador está obligado a mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato. El arrendador no puede eludir esa obligación por la simple alegación de la falta de pago, si el arrendatario puede probar de algún otro modo que no sea por la prueba de haber verificado el pago, que el contrato es válido y subsistente.

Iguales consideraciones surgirían de la ley de evidencia que empezó a regir con posterioridad a la Ley de Desahucio, y especialmente de los artículos 32, 34 y 35 de dicha ley.

Con excepción de que en la sección 9 a la vez se permite la confesión judicial, la Ley de Desahucio es una copia virtual de los artículos 1559 y siguientes del Código de Enjuiciamiento Civil Español. La presunción es que la legislatura tuvo la intención de adoptar aquí la ley con la interpretación que le dió la Corte Suprema de España. (*James* v. *Appel.*, 192 U. S., 129; *Copper Queen Consolidated Mining Co.* v. *Arizona*, 206 U. S., 474; *Hernández* v. *Felici*, 11 P. R. R., 395, 11 D. P. R., 412.) La Corte Suprema de España ha resuelto interpretando el artículo correspondiente al 9 de la Ley de Desahucio, que cuando la defensa no es la de haberse verificado el pago, puede presentarse otra prueba. (Sentencias del Tribunal Supremo de España de enero 22, 1896; enero 5, 1888; enero 25, 1886.)

La acción asumida por la corte inferior en el presente caso ordenando que fueran eliminadas las defensas de la demandada, y probablemente su negativa a permitir que se hiciera la enmienda, se fundó en una mala interpretación de la ley.

Hemos evitado expresamente entrar a discutir la validez de la defensa especial, según se presentó o ahora ha sido propuesta, porque la excepción previa formulada en la corte inferior así como la subsiguiente eliminación de la misma por orden de la corte se refería solamente al derecho de la demandada a probar alguna cosa que no fuera el hecho de haberse verificado el pago, y porque no consideramos que la cuestión referente a la suficiencia de la defensa fué debidamente argumentada.    La demandada trataba de hacer enmiendas teniendo en cuenta las circunstancias bajo las cuales se le había hecho ir apresuradamente al juicio.    Las cortes, según hemos dicho, por lo general, son contrarias a decretar la nulidad de un contrato y la demandada de buena fe trataba de demostrar que existían circunstancias que explicaban la falta de pago y que constituían una defensa.    Tenía derecho la demandada a que la corte ejercitara su discreción con respecto a la solicitud que hizo para hacer enmiendas, y el dejar de hacerlo por parte de la corte, constituyó también un error.

Debe revocarse la sentencia y devolverse el caso a la corte inferior con instrucciones de que se señale otro día para proceder de nuevo a la primera comparecencia de la demandada.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.