# 98 DTA 136

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE SAN JUAN

SANRIO TRUJILLO ALTO PLAZA, INC.
Apelante

v.

LUAN INVESTMENT, SE
Apelada

Núm. KLAN-97-00699

San Juan, Puerto Rico, a 20 de marzo de 1998

Panel integrado por su Presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Sanrío Trujillo Alto Plaza, Inc. (en adelante, Sanrío) solicita la revisión de la Sentencia Sumaria emitida el 1 de mayo de 1997 por el Tribunal de Primera Instancia, Sala Superior de San Juan, que desestimó su demanda de daños y perjuicios contra Luan Investment, SE (en adelante, Luan). La Sentencia fue notificada el 13 de mayo de 1997.

Sanrío solicitó la reconsideración el 27 de mayo de 1997. Aunque el tribunal de instancia acogió la moción el 4 de junio, posteriormente la declaró No Ha Lugar mediante Resolución del 12 de junio de 1997. Así las cosas, el 8 de julio de 1997 Sanrío apeló ante este Foro.

Luan, por su parte, presentó Alegato de la Parte Apelada el 22 de julio de 1997.

Consideradas sendas comparecencias, a la luz del derecho aplicable, decidimos REVOCAR la Sentencia Sumaria recurrida y DEVOLVER el caso para continuación de los procedimientos.

### I

Luan arrendó a Sanrío un local en el Aguadilla Mall mediante contrato suscrito el 9 de agosto de 1994. Sanrío planeaba abrir allí una tienda de ropa.

La arrendataria no pudo abrir el negocio en la fecha esperada e incurrió en atrasos en el pago de su renta mensual. La tienda eventualmente abrió al público, pero Sanrío continuaba atrasada en sus pagos y su deuda con Luan aumentaba.

A pesar de que el contrato de arrendamiento permitía su cesión a una tercera persona con el consentimiento del arrendador, tal facultad estaba condicionada a que el arrendatario cesionista estuviera al día en sus pagos. Ver párrafo 27 del Contrato, Apéndice, página 50. No obstante su situación, Sanrío inició gestiones para buscar algún negocio que comprara el suyo y le sustituyera en el contrato. Así lo hizo saber a la arrendadora Luan, quien aparentemente, no mostró oposición. Véase, cartas de Sanrío dirigidas a Luan el 25 de junio, 1 de julio y 2 de julio de 1996. ■

Según surge de la declaración jurada que acompaña a la Oposición a Sentencia Sumaria, los candidatos que interesaban el local ocupado por Sanrío eran cuatro tiendas de ropa: las Tiendas Arias, Almacenes Plaza, Tiendas Madison y Éclipse, Apéndice, página 45. *"...[T]odos estaban dispuestos a suministrar una suma suficiente para poner al día las rentas con Luan y el sobrante sería para Sanrío; todos los candidatos estaban de acuerdo y conforme con asumir y continuar con las obligaciones del contrato de arrendamiento que habían suscrito Sanrío y Luan,"* Id. En una actuación que Sanrío cataloga de *"arbitraria, caprichosa e irrazonable",* Luan rechazó a todos los candidatos para la cesión sin expresar fundamento o razón, Id.

Luan inició un procedimiento de desahucio el 18 de octubre de 1996. Sanrío instó una demanda el 23 de diciembre de 1996 contra Luan por los alegados daños y perjuicios que le causó la negativa de Luan a aceptar la cesión del arrendamiento a un tercero. El 21 de enero de 1997, Luan contestó la demanda y estableció que Sanrío no podía pedir la cesión, ya que el contrato sujetaba esa facultad a que el arrendatario no estuviera en *"default"* (incumplimiento). Sin embargo, Luan admite en su contestación a la demanda que había proseguido negociaciones con todos los candidatos que Sanrío presentó para ceder la llave del local. Véase, Apéndice, página 5. Según Luan, ninguno de los candidatos accedió a saldar a nombre de Sanrío el monto total de la deuda, Id. De su faz, la demanda de Sanrío y la contestación de Luan presentan versiones encontradas en cuanto a la razón por la cual no culminaron las negociaciones para la cesión del arrendamiento.

No obstante, tras obtener una Sentencia favorable en la acción de desahucio (APE-96-0075), Luan presentó una Moción de Sentencia Sumaria en el caso en el cual era demandada, KAC-96-1570. Véase, Orden, Apéndice, página 54 y Moción Solicitando Sentencia Sumaria, Apéndice, página 24.

En su Moción, Luan invocó la defensa de cosa juzgada para poner fin a la acción de daños y perjuicios. Allí expuso que para decretar el desahucio fue necesario que un tribunal resolviera que efectivamente existió falta de pago de parte de Sanrío. Así razona Luan que, como la falta de pago (incumplimiento) es una de sus defensas afirmativas, *"procede que se dicte sentencia sumaria en el caso de autos desestimando la demanda incoada contra la parte peticionaria bajo el fundamento de cosa juzgada,"* Apéndice, páginas 34-35. Sanrío presentó oposición a ello por entender que faltaba el requisito de identidad de causas entre una y otra acción; y que existe una controversia de hechos que amerita una vista en su fondo y que no podía ser ventilada en el caso de desahucio por la naturaleza sumaria de dicho procedimiento, Apéndice, páginas 37-46. El tribunal de instancia declaró Con Lugar la Moción de Luan y emitió Sentencia Sumaria para desestimar la demanda bajo la doctrina de cosa juzgada. Véase, Apéndice, páginas 9-15. El juzgador acogió los planteamientos de Luan a los efectos de que según los casos de *Worldwide Food v. Alberic Colón,* **93 J.T.S. 115,** y *Marín v. Montijo,* 109 D.P.R. 268 (1979), Sanrío no estaba limitada de presentar prueba sobre los daños en el pleito de desahucio, por lo cual, presuntamente, es aplicable la doctrina de cosa juzgada. En conclusión, determinó el foro de primera instancia:

*"En vista de que en el caso de autos el cumplimiento con los términos del contrato es requisito sine qua non para que la parte demandante tenga el derecho reclamado en la demanda y habiéndose determinado la falta de pago (incumplimiento) de parte de Sanrío por un Tribunal mediante sentencia final y firme, procede que se dicte sentencia sumaria en el caso de autos desestimando la demanda incoada contra la parte peticionaria bajo el fundamento de cosa juzgada."*

También le fue impuesto a Sanrío el pago de $2,000.00 por concepto de honorarios de abogado.

En sus alegatos ante nos, tanto Sanrío como Luan, esencialmente reiteran los argumentos que presentaron ante el tribunal de instancia.

## II

Para la solución de esta controversia, resulta esencial examinar la doctrina de cosa juzgada, la aplicabilidad de la jurisprudencia invocada en torno al procedimiento sumario de desahucio y la utilización de la moción de sentencia sumaria.

La doctrina de cosa juzgada *(res judicata)* proviene de la tradición civilista. En Puerto Rico está expresamente dispuesta en el Artículo 1204 del Código Civil, 31 L.P.R.A. Sección 3343:

*"Las presunciones establecidas por la ley pueden destruirse por la prueba en contrario, excepto en los casos en que aquélla expresamente lo prohiba.*

*Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio en revisión.*

*Para que la presunción de cosa juzgada surta efecto en otro juicio es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sean invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron...".*

*"El efecto de la doctrina de cosa juzgada, cuando ésta aplica es que la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas las cuestiones litigadas y adjudicadas y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior," Pagán Hernández v. U.P.R.,* 107 D.P.R. 720, 732-733 (1978).

Esta doctrina tiene el propósito de proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidos pleitos sobre la misma controversia; promover la economía judicial y administrativa al reducir los litigios innecesarios; y evitar decisiones inconsistentes,

*Rodríguez Rodríguez v. Colberg Comas,* **92 J.T.S. 102,** página 9795.

Debido a que el efecto de la aplicación de la doctrina de cosa juzgada es que el(la) juez, conforme a lo resuelto en un pleito anterior, adjudicará la controversia ante sí sin que las partes lleguen a juicio, la jurisprudencia ha exigido consistentemente que concurra *"la más perfecta identidad"* de los elementos que señala el Artículo 1204, *supra, Bolker v. Tribunal,* 82 D.P.R. 816, 824-825 (1961); *Fresh-O-Baking Co. v. Molinos de P.R.,* 103 D.P.R. 509, 514 (1975); *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. 533, 535 (1975); *A&P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753, 764 (1981); *P.I.P. v. C.E.E.,* 120 D.P.R. 580, 603-604 (1988); *Rodríguez Rodríguez v. Colberg Comas, supra; Rodríguez Oyola v. Machado,* **94 J.T.S. 82,** página 12007.

En *A & P Gen. Contractors v. Asoc. Caná, supra,* páginas 764-767, el Tribunal Supremo discutió cada uno de estos elementos. El primero de éstos (la cosa ) es el *"objeto o materia sobre la cual se ejercita la acción."* La causa fue definida como *"el motivo de pedir... el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas."* En cuanto a las personas, *"se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o están unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas,"* Artículo 1204 del Código Civil, *supra.* La calidad de los litigantes es el carácter en el cual la persona viene al pleito, i.e. acreedor, deudor, poseedor, etc.

En el caso que nos ocupa, coincidimos con Sanrío en que el tribunal *a quo* no debió aplicar la doctrina de cosa juzgada para desestimar su acción de daños porque está ausente el elemento de identidad de causa.

En una demanda de desahucio el dueño de una propiedad inmueble busca lograr sumariamente que quien está en posesión la desaloje, ya sea éste un poseedor en precario o, como en el caso de autos, un arrendatario que ha dejado de pagar el canon. En la demanda de daños, por otro lado, Sanrío alega haber sufrido daños a causa de la negativa *"caprichosa"* de Luan a aceptar alguno de los candidatos que consiguió para la sustitución en el contrato de arrendamiento. En otras palabras, que el *"motivo de pedir"* o *"fundamento capital"* es el resarcimiento de los daños que sufrieron los demandantes a causa de unos alegados actos u omisiones culposos o negligentes, según lo provee el Artículo 1802 del Código Civil, 31 L.P.R.A. Sección 5141. No estamos en el segundo pleito ante una causa de acción *"embebida en la primera", Rodríguez Rodríguez v. Colberg Comas, supra,* página 9796.

No solamente la disimilitud de causas impide la aplicación de la doctrina de cosa juzgada, sino también el hecho de que la segunda demanda no pudo haber sido litigada y adjudicada en la anterior. Las demandas de desahucio son tramitadas en un procedimiento especial sumario que no da cabida a una reclamación como la de Sanrío. Ello es así, en particular cuando la acción fue instada por falta de pago de los cánones de arrendamiento:

*"Sección 2829. Prueba en el juicio por falta de pago*

*Cuando la demanda se funde en falta de pago del canon o precio convenido en un contrato, no se admitirá al demandado otra prueba que la del recibo o cualquier otro documento en que conste haberse el pago verificado.*

*Las pruebas de ambas partes comprenderán los hechos fundamentales de la cuestión principal,"* (Subrayado nuestro). █

En *Turabo Limited v. Velardo Ortiz,* **92 J.T.S. 44,** página 9380, el Tribunal Supremo identifica algunas defensas que, por estar íntimamente relacionadas a las causas del desahucio por falta de pago, pueden ser levantadas por el demandado en el procedimiento sumario de desahucio. Estas son: la defensa de que el casero no había reajustado la renta conforme a los requisitos de una ley federal, *Mora Dev. Corp. v. Sandín,* 118 D.P.R. 748 (1987); la defensa de que los actos del casero, al no aceptar el pago, le impedían instar la acción, *Mas et al v. Borínquen Sugar Co.,* 18 D.P.R. 304 (1912); y la existencia de una controversia de titularidad, pues entonces podrá probar que su posesión no está basada en contrato de arrendamiento sino en un título propietario sobre el objeto del desahucio, *Brunet*

*v. Corte*, 45 D.P.R. 901 (1933).

Otra de estas situaciones mencionada en *Turabo, supra*, en que un demandado en desahucio puede presentar prueba más allá del recibo de pago es cuando el arrendatario tiene derecho al reembolso de los costos que realizara en la propiedad arrendada. Esta es la situación que presenta *Marín v. Montijo, supra*, invocado por Luan para afirmar que Sanrío pudo haber litigado la causa de acción en daños durante el pleito de desahucio. Sin embargo, la excepción de *Marín v. Montijo, supra*, no es aplicable al presente caso. Sanrío fue desahuciado por incumplimiento de los pagos del arrendamiento. El apelante no permanecía en el local en virtud del ejercicio de un derecho de retención sobre el inmueble hasta tanto fuera reembolsado el costo de unas mejoras, como era en el caso de Marín, *supra*, sino que permaneció en el local en la confianza de que conseguiría un nuevo arrendatario que saldara la deuda. La situación de *Marín, supra*, es diferente a la que presenta el caso de autos. Los daños alegados por Sanrío no eran una causa de acción oponible al hecho innegable de que, a requerimiento de Luan, Sanrío tenía que abandonar el local porque no había efectuado los pagos correspondientes.

Tampoco ocurre aquí como en el caso de *Worldwide Foods v. Alberic Colón, supra*. Allí el Tribunal Supremo rechazó la teoría del demandante de que la sentencia en un pleito de desahucio nunca podía ser utilizada como fundamento para invocar la doctrina de cosa juzgada en un juicio ordinario posterior. En un pleito posterior al de desahucio, el arrendatario desahuciado pedía cumplimiento específico de la cláusula de opción a compra estipulada en el contrato de arrendamiento. El Tribunal Supremo acogió la defensa de cosa juzgada esgrimida por el arrendador porque el arrendatario pudo haber opuesto en el procedimiento de desahucio su derecho a no pagar más cánones y comprar el inmueble en virtud del contrato. Al no hacerlo y ser desahuciado, el contrato había quedado rescindido y, por ende, no había lugar para una posterior demanda de cumplimiento específico.

En resumidas cuentas, podemos concluir que aunque el procedimiento de desahucio por falta de pago es uno de naturaleza sumaria, en que las defensas del demandado están limitadas, hay ciertas defensas que pueden y deben ser levantadas dentro de ese mismo pleito y no en uno posterior, tales como; una controversia de titularidad, el ejercicio del derecho de retención por un arrendatario que pide reembolso de las mejoras o la petición de reajuste en la cuantía adeudada en virtud de alguna disposición de ley.

No obstante, ninguna de esas situaciones encaja en el caso que nos ocupa. El reclamo de resarcimiento por los daños que según Sanrío le causó Luan no era oponible como defensa en la acción de desahucio. Su dilucidación pertenece a un pleito independiente.

Por otro lado, es norma conocida que el mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario a ser concedido únicamente cuando la prueba documental presentada con la moción, así como el resto del expediente, establezca con claridad la existencia de un derecho. Solamente cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes podrá emitir la sentencia sumaria, *PFZ Properties Inc. v. General Accident Insurance Co.*, **94 J.T.S. 116**, páginas 111 y 124-125; *Corp. Presiding Bishop v. Purcell*, 117 D.P.R. 714, 721 (1986). El fin de la sentencia sumaria es aligerar la tramitación de un caso para permitir la adjudicación sin celebrar una vista en los méritos cuando de documentos no controvertidos surge que no existen controversias de hechos y lo que resta es aplicar el derecho, *PFZ Properties, supra*, página 125; *Caquías Mendoza v. Asoc. de Residentes*, **93 J.T.S. 127**, páginas 11068 y 11079; *Cuadrado Lugo v. Santiago*, **90 J.T.S. 59**, páginas 7698, 7702.

A tenor con ese fin, el juzgador deberá analizar concienzudamente la moción de sentencia sumaria y su oposición, sus anejos y el expediente en su totalidad, con el propósito de determinar si queda algún hecho material en controversia o si existen alegaciones afirmativas en la demanda radicada que no hayan sido refutadas. Cualquier duda que surja referente a la existencia de un hecho material a la controversia debe ser motivo para no disponer de la causa de acción mediante sentencia sumaria, *Caquías Mendoza v. Asociación de Residentes, supra*, página 11079; *Corp. Presiding Bishop v. Purcell, supra*, página 721.

Al aplicar estas normas al caso de autos, encontramos que el tribunal de instancia erró al acoger la moción de sentencia sumaria porque existe una controversia de hechos que debe ser adjudicada en juicio plenario.

Luan acepta que Sanrío presentó varios candidatos para ceder la llave del local y que llevó a cabo negociaciones con todos los candidatos presentados, pero sostiene que ninguno de ellos accedió a saldar a nombre de Sanrío el monto total de la deuda. Sin embargo, Sanrío había alegado en su Demanda y reiteró en su Oposición a la moción de sentencia sumaria que todos los candidatos que sometió para la propuesta cesión estaban dispuestos a suministrar una suma suficiente para poner al día las rentas con Luan y estaban de acuerdo con asumir y continuar con las obligaciones del contrato de arrendamiento. Con la Oposición, Sanrío presentó una declaración jurada que controvirtió la versión ofrecida por la promovente Luan. Véase, Declaración Jurada de la presidenta de la Junta de Directores de Sanrío, Apéndice, página 45.

Aun cuando los términos del contrato dispusieran como requisito *sine qua non* para la cesión que el arrendatario no estuviera atrasado en sus pagos, la existencia de unas negociaciones por parte de Luan con los candidatos sometidos por Sanrío pudiera dar lugar a una modificación o unas expectativas de modificación de dichos términos. Por tanto, es necesario saber si las negociaciones con los candidatos fueron realizadas de buena fe y cuáles fueron los verdaderos motivos para el rechazo: si fue el puro *"capricho, arbitrariedad e irrazonabilidad"* que Sanrío le imputa a Luan o si por el contrario, como alega Luan, ninguno de los candidatos accedió a asumir las responsabilidades de Sanrío. Esta es una controversia genuina que surge del expediente y amerita ser adjudicada tras una vista evidenciaria y no mediante el mecanismo de sentencia sumaria.

La sentencia sumaria es considerada como un remedio extraordinario y sólo es viable sin el menoscabo de poner en peligro o lesionar los intereses de las partes, *Sotomayor v. American*, **94 J.T.S. 132,** página 347; *Neca Mortgage Corp. v. A & W Developers*, **95 J.T.S. 10,** página 603. Ello responde a que el objetivo de aligerar el trámite de un caso no puede derrotar el principio fundamental de todo proceso judicial: alcanzar una solución justa, *PFZ Properties, supra*, página 125.

### III

Por los fundamentos anteriormente expresados, REVOCAMOS la Sentencia Sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, KAC-96-1570 (902), y DEVOLVEMOS el caso para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 135

**1.** De dichas cartas transcribimos: *"Como es de su conocimiento, estamos haciendo las gestiones pertinentes desde hace varios meses para vender la tienda por un precio muy por debajo de la cantidad incurrida en la remodelación. Nuestra única intención es pagar la renta adeudada y obtener un inquilino que sea de su aceptación".* Carta del 25 de junio de 1996.

*"Tenemos dos buenos prospectos que estarían dispuestos a entrar en el Mall de Aguadilla. Le informaremos mañana cuales [sic] son los mismos,"* Carta del 1 de julio de 1996.

*"En este momento tenemos dos personas interesadas en el local. Estamos esperando que nos contesten para la semana que viene. Le mantendremos informado a lo que suceda con estas personas".* Carta del 2 de julio de 1996.

**2.** Artículo 628, Código Enjuiciamiento Civil, 32 L.P.R.A. Sección 2829.