EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Lorenzo Hernández; Carmen L. Lorenzo Nieves; por sí y su Sociedad de Gananciales<br><br>Peticionarios<br><br>v.<br><br>Kelvin Morales Nieves; y John Doe; y su esposa Jane Doe Y Sociedad de Gananciales<br><br>Recurrida | Certiorari<br><br>2017 TSPR 08<br><br>197 DPR \_\_\_\_ |

Número del Caso: CC-2014-122

Fecha: 20 de enero de 2017

Tribunal de Apelaciones:

      Región Judicial de San Juan y Guayama, Panel III

Abogado de la Parte Peticionaria:

      Lcdo. José Lorenzo Hernández
      Lcda. Carmen Luz Lorenzo Nieves

Abogado de la Parte Recurrida:

      Lcdo. Ramón Edwin Colón Pratts

Materia: Sentencia con Opinión de Conformidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Lorenzo Hernández;
Carmen L. Lorenzo Nieves;
por sí y su Sociedad de
Gananciales

    Peticionarios

      v.                      **Núm.**CC-2014-0122

Kelvin Morales Nieves; y
John Doe; y su esposa Jane Doe
y Sociedad de Gananciales

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 20 de enero de 2017

El 27 de junio de 2014, expedimos el auto de *certiorari* presentado por el Sr. José Lorenzo Hernández, la Sra. Carmen Luz Lorenzo Nieves y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los peticionarios). Tras examinar los alegatos presentados por las partes y estando en posición de resolver, se revocan las sentencias de los foros recurridos mediante las cuales se desestimó la causa de acción de retracto instada por los peticionarios. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos relacionados con la referida acción de retracto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión de Conformidad a la que se unen la Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Martínez Torres hace constar la siguiente expresión a la que se une el Juez Asociado señor Estrella Martínez:

"El Juez Asociado señor Martínez Torres está conforme con la sentencia, pues la

controversia se resuelve por los fundamentos expuestos en <u>Vega Montoya v. Registrador</u>,179 DPR 80, 87-90 (2010) y en <u>Kogan v. Registrador</u>, 125 DPR 636, 652-653 (1990)."


                        Juan Ernesto Dávila Rivera
                      Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| José Lorenzo Hernández; Carmen L. Lorenzo Nieves; por sí y su Sociedad de Gananciales<br><br>Peticionarios<br><br>v.<br><br>Kelvin Morales Nieves; y John Doe; y su esposa Jane Doe y Sociedad de Gananciales<br><br>Recurridos | CC-2014-0122 | |

Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se unen la Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Colón Pérez

San Juan, Puerto Rico, a 20 de enero de 2017

En esta ocasión, nos corresponde determinar si, mediante un acuerdo entre algunos integrantes de una comunidad hereditaria, y la subsiguiente toma de posesión por parte de uno de ellos de un bien inmueble que es parte del caudal relicto, se configura una división de los bienes del caudal que convierte a ese integrante en extraño a la comunidad y, por tanto, impide el ejercicio de su derecho de retracto. Particularmente, nos compete dirimir si tal convenio tuvo efectos particionales respecto al bien inmueble en cuestión. Aunque consideramos que la decisión que hoy emite este Tribunal es la correcta, estimamos necesario consignar los fundamentos jurídicos aplicables a la controversia.

I

La controversia ante nuestra consideración se origina con la presentación de una acción de retracto ante el Tribunal de Primera Instancia por el Sr. José Lorenzo Hernández, la Sra. Carmen Luz Lorenzo Nieves y la Sociedad Legal de Gananciales compuesta por ambos (peticionarios). En esencia, arguyeron que la propiedad que poseían pertenecía a una comunidad hereditaria indivisa, de la cual se habían convertido en cesionarios luego de adquirir una parte de la finca de una de las herederas de la Sra. Dolores Hernández Pérez.

La señora Hernández Pérez falleció intestada el 7 de febrero de 1985, dejando varias fincas en el Barrio Cuchillas de Moca. Durante los años de 1985 a 1987, los herederos expresaron interés en solares particulares de las fincas que formaban parte del caudal hereditario y llegaron a un acuerdo con relación a los solares que se les adjudicarían. Luego de contratar a un ingeniero y a una abogada, comenzaron los trámites conducentes a segregar las parcelas de la finca y tramitar la declaratoria de herederos.[1] Los trámites de segregación contenidos en el acuerdo, empero, nunca se concretaron, puesto que

---

[1] Es importante notar que el presunto acuerdo al que llegaron los herederos no formó parte del apéndice. Sólo se incluyó el contrato de mensura que refleja qué terrenos le corresponderían a cada heredero una vez se segregaran las fincas que formaban parte del caudal.

no se obtuvieron los permisos necesarios para ello. De otra parte, el 19 de diciembre de 1988, el Tribunal de Primera Instancia decretó la declaratoria de herederos, en la cual se estableció que la comunidad hereditaria estaría compuesta de nueve hijos y seis nietos, representantes de un hijo pre muerto.

El 15 de abril de 2004, una de las herederas, la Sra. Venancia Hernández Hernández, vendió su participación en la comunidad hereditaria a los peticionarios, mediante una *Escritura de cesión de derechos y acciones hereditarias*, la cual fue elevada a escritura pública. De esta manera, los peticionarios ingresaron a la comunidad hereditaria en calidad de cesionarios o copartícipes. En la escritura de compraventa, específicamente se incluyeron las siguientes advertencias:

> (3) Que no podrá segregar, lotificar, marcar o de algún modo identificar su participación sobre dicho terreno sin el correspondiente permiso de la Junta de Planificación, Administración de Reglamentos y Permisos del Estado Libre Asociado de Puerto Rico o la agencia correspondiente.
> (4) Que la participación adquirida por los Cesionarios es abstracta e indefinida y que cualquier arreglo, convenio o pacto para segregar, lotificar, marcar o de algún modo identificar será nulo e ineficaz y podrá constituir delito grave, si no existe el correspondiente permiso de las agencias reguladoras.

*Apéndice*, en la pág. 79.

Luego de adquirir la referida participación en el caudal relicto, en el año 2005, el peticionario,

señor Lorenzo Hernández, reinició los trámites correspondientes para la segregación de los terrenos que habían quedado inconclusos casi dos décadas antes. A esos efectos, convocó a los herederos y cesionarios[2] a varias reuniones y elaboró un plan enmendado de segregación de solares identificando los predios que en su día se le adjudicarían a cada uno de ellos.

Luego de la celebración de varias reuniones, los herederos y representantes que asistieron a éstas[3] acordaron los linderos y las cabidas de los terrenos que les serían adjudicados.[4] Asimismo, suscribieron un *Contrato de mensura* con un ingeniero, quien estaría a cargo de tramitar la segregación de las fincas ante las agencias gubernamentales pertinentes. Es preciso destacar, sin embargo, que no todos los herederos tomaron parte en estos acuerdos, puesto que, para la fecha en que se pactaron, se desconocía del paradero del Sr. Ismael Hernández Hernández, hijo de la causante, quien no

---

[2] Además de los peticionarios, un sobrino de la causante también adquirió, en la misma fecha y mediante escritura pública, una participación en la comunidad por parte de otra de las herederas, convirtiéndose también en cesionario y copartícipe de la comunidad hereditaria.

[3] A estas reuniones, algunos de los herederos comparecieron representados por sus hijos o cónyuges. No surge del expediente, sin embargo, que estos representantes estuviesen debidamente autorizados mediante una escritura de poder.

[4] El acuerdo de división que resultó de estas reuniones no se elevó a escritura pública, dado que no se habían completado los trámites de segregación.

suscribió el *Contrato de mensura* antes mencionado y no participó de ninguna de las reuniones convocadas por el peticionario.[5]

Posteriormente, el 12 de diciembre de 2010, el peticionario, señor Lorenzo Hernández, advino en conocimiento de que otra heredera también había vendido su participación en la comunidad hereditaria al Sr. Kelvin Morales Nieves (recurrido).

Tras enterarse de la compraventa, y dentro del término dispuesto para ello, el 17 de diciembre de 2010, los peticionarios presentaron la acción de retracto correspondiente.[6] En ésta, alegaron que la comunidad hereditaria permanecía indivisa por lo

---

[5] Contra este heredero ausente, se habían instado dos acciones de división de herencia que fueron desestimadas por falta de emplazamiento. La primera fue presentada por el peticionario y otro integrante de la comunidad hereditaria, el 12 de febrero de 2009, con el propósito de "poder llevar a cabo los trámites para obtener los permisos que permitiera otorgar escrituras". *Sentencia del Tribunal de Primera Instancia*, en la pág. 7. La segunda acción de división de herencia se presentó el 4 de marzo de 2011 y fue desestimada el 19 de septiembre de 2011. Según lo reconoció el Tribunal de Primera Instancia, esta segunda demanda de división de comunidad se presentó luego del inicio del pleito ante nuestra consideración.

[6] Nótese que los peticionaros presentaron una demanda de retracto de herederos al amparo del artículo 1020 del Código Civil. Cód. Civ. P.R. Art. 1020, 31 L.P.R.A. sec. 2886. En la alternativa, los peticionarios plantearon que se les permitiera ejercer el derecho de retracto de comuneros dispuesto en el artículo 1412, 31 L.P.R.A. sec. 3922. El Tribunal de Primera Instancia, al desestimar la acción, recurrió a la figura de retracto de comuneros. Dado que tal determinación no se cuestionó ante el foro apelativo intermedio ni ante este Foro, entendemos que no nos compete, en este caso en particular, dirimir su corrección.

que, ante la venta de la participación de una de las herederas a un extraño, procedía que se le permitiera, como cesionario y copartícipe de la comunidad, ejercer su derecho a retraer dicha participación.

Luego de la celebración del juicio en su fondo, el Tribunal de Primera Instancia desestimó la acción de retracto instada por los peticionarios al amparo de la Regla 39.2 de Procedimiento Civil. En esencia, el foro primario concluyó que no procedía el retracto de comuneros puesto que "los herederos hicieron una división material de la finca con la toma de posesión de los bienes".[7] Específicamente, determinó lo siguiente:

> El contrato o pacto de división entre los herederos quedó perfeccionado con la firma de los herederos del Contrato de Mensura y la carta de permiso al ingeniero Méndez, luego de llegarse al acuerdo en cuanto a las cabidas y linderos de los predios, quedando únicamente postergado [sic] la consumación del contrato con el otorgamiento de escritura formal luego de que se obtuvieran los correspondientes permisos de segregación.

*Sentencia del Tribunal de Primera Instancia*, en la pág. 20.

---

[7] El Tribunal de Primera Instancia fundamentó su dictamen en lo decidido por este Tribunal en *Quiñones Quiñones v. Quiñones Irizarry*, 91 D.P.R. 225 (1964). Sin embargo, el foro primario pasó por alto el hecho de que, en ese caso, sí se otorgó una escritura de división de la comunidad, por lo que era plausible liquidar la participación de uno de sus integrantes con una porción de terreno sobre la cual se realizó, mediante un contrato privado, una "división material".

En cuanto a la ausencia del heredero Ismael Hernández Hernández, el foro primario se limitó a expresar que el hecho de que éste no hubiese firmado el *Contrato de mensura* no era óbice para concluir que se había concretado la división material. Explicó que, dado que el señor Hernández Hernández había sido parte del pacto inicial de división, y puesto que el solar que le había sido adjudicado en ese primer acuerdo fue el mismo que se le adjudicó en el segundo, se entendía que éste había accedido a ese último. Además, determinó que, ante la imposibilidad de dar con su paradero, los demás herederos consultaron con su hija y ésta autorizó expresamente al peticionario, señor Lorenzo Hernández, a continuar con los trámites de segregación que resultaron del segundo acuerdo. Véase *id.*

Por último, el foro primario destacó, tanto en la sentencia como en una resolución aclaratoria posterior, que la comunidad sólo quedaba disuelta en cuanto a los peticionarios. Razonó, pues, que éstos, al haber tomado la posesión física de un solar, se habían convertido en extraños a la comunidad. Por ello, estaban impedidos de ejercer el derecho de retracto. El foro primario aclaró, empero, que su determinación no implicaba que se había concretado la división o partición de la herencia o que la finca se había segregado. Más bien, indicó que se había dado una adjudicación material en cuanto al peticionario

pero que no había mediado escritura pública, por lo que no se podían reclamar títulos o segregaciones. Véase *Resolución del 6 de junio de 2003*, *Apéndice*, en la pág. 77.

Inconformes con ese dictamen, los peticionarios acudieron al Tribunal de Apelaciones. Ese foro, por su parte, confirmó la sentencia apelada. En extrema síntesis, concluyó que la ocupación de facto de un solar que por acuerdo de todos le fue asignado a los peticionarios —es decir, extrajudicialmente— impedía el ejercicio del derecho de retracto de comuneros.[8]

Así las cosas, los peticionarios acudieron ante este Tribunal mediante un recurso de *certiorari*, el cual fue expedido el 17 de junio de 2014. En éste, plantearon que los foros recurridos erraron al concluir que se concretó una división material de la finca y que eso, a su vez, los convirtió en extraños a la comunidad. El recurrido, de otra parte, insiste en que la finca fue dividida luego de que todos los herederos acordaran la adjudicación de los solares que serían segregados y que tal división material se dio precisamente a instancia de los peticionarios.

---

[8] El Tribunal de Apelaciones subrayó que no contó con la transcripción de la prueba, por lo que estaba impedido de entrar a considerar la apreciación de ésta realizada por el foro primario. Cabe señalar, sin embargo, que la controversia en este caso versa estrictamente sobre un asunto de Derecho, por lo que no era necesaria la presentación de una transcripción de la prueba.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

En aras de dirimir la controversia planteada resulta preciso repasar las características de la comunidad hereditaria y los requisitos que exige nuestro ordenamiento para su extinción.

## A

La comunidad hereditaria surge al momento en que dos o más herederos concurren en una sucesión. Véase Efraín González Tejera, *Derecho de Sucesiones* 399, T. I. (2005). Esta comunidad comprende todos los activos y pasivos del causante y subsiste hasta tanto se produzca su partición. Véase *Cintrón Vélez v. Cintrón De Jesús*, 120 D.P.R. 39, 48 (1987).

En cuanto a las características distintivas de la comunidad hereditaria, hemos señalado que ésta es: (1) universal, porque recae sobre la unidad patrimonial de la herencia; (2) forzosa, "en cuanto surge con independencia absoluta de la voluntad de los titulares", y (3) transitoria, "pues se constituye por la ley para disolverse por la partición". *Kogan v. Registrador*, 125 D.P.R. 636, 651 (1990) (citando a José Castán Tobeñas, *Derecho Civil español, común y floral* 289-99, T. VI, Vol. I (8va ed. 1978)).[9] Son precisamente la universalidad

---

[9] Si bien lo resuelto en *Kogan v. Registrador* y en *Vega Montoya v. Registrador*, 179 DPR 80 (2010),

y la transitoriedad las características determinantes en la disposición de la controversia que nos ocupa.

La universalidad, de una parte, presupone que, mientras subsista la comunidad, cada uno de los herederos posee un derecho sobre la totalidad del caudal relicto y no un derecho concreto sobre los bienes que lo integran. Véase *Cintrón Vélez*, 120 D.P.R. en la pág. 48. Por tanto, el derecho de los herederos sobre el caudal relicto recae sobre una cuota abstracta y no sobre un bien particular perteneciente a éste. En atención a ello, mientras subsista la comunidad hereditaria, un heredero puede enajenar sus derechos y acciones sobre su participación abstracta en el caudal, pero no puede

---

pueden incidir sobre este caso, precisa aclarar que los foros recurridos dictaminaron que la partición convencional podía darse en virtud de una división material de una finca inmueble. Para llegar a esa conclusión, estimaron que el consentimiento de uno de los herederos para adjudicar las parcelas contenidas en tal finca, se extendía a acuerdos posteriores de los que éste no fue partícipe.

Ante esta sutileza conceptual, consideramos que controversias relacionadas con la inscripción de un inmueble que forma parte de una comunidad hereditaria que aún no ha sido adjudicada, son distintas a la que presenta este caso. Ello, porque aquí, se determinó que la posesión física de una parcela por parte de un comunero hereditario, convertía a este último en un extraño a la comunidad impedido de ejercer el derecho de retracto. Para así concluir, equipararon la división material de una finca que es parte de una comunidad ordinaria, con la partición convencional que ha de realizarse para extinguir una comunidad hereditaria. Estimamos que ese razonamiento desacertado, adoptado por ambos foros recurridos, ameritaba una opinión por parte de este Foro.

enajenar o gravar un bien determinado que forme parte de la herencia. Esta limitación al derecho de los herederos se fundamenta en que

> mientras persista el estado de indivisión en la comunidad hereditaria, aun cuando sea fácilmente determinable la cuota individual, . . . el dominio de cada heredero estará difuso o diluido por tod[o] [el patrimonio que el causante transmitió] en espera de que el efecto distributivo de la partición se concrete y precise lo que a cada cual corresponde.

*Osorio v. Registrador*, 113 D.P.R. 36, 37-38 (1982). De ahí que, hasta que no se realice la partición, ninguno de los herederos podrá ejercer un derecho sobre un bien particular de la comunidad.

De otra parte, la transitoriedad implica que "[n]ingún coheredero podrá ser obligado a permanecer en la indivisión de la herencia, a menos que el testador prohíba expresamente la división." Cód. Civ. P.R. Art. 1005, 31 L.P.R.A. sec. 2873. La partición es un mecanismo mediante el cual se extingue esa indivisión, puesto que, mediante ella, "se le confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados". Cód. Civ. P.R. Art. 1021, 31 L.P.R.A. sec. 2901. La acción de partición, por lo tanto, representa el "momento de la liquidación de la universalidad patrimonial y la adjudicación de bienes cuando se le confiere a cada heredero la propiedad exclusiva de los bienes hereditarios que le corresponden y, por lo tanto, deja de existir la

comunidad hereditaria". *Cintrón Vélez*, 120 D.P.R. en la pág. 39.

El Código Civil contempla varias maneras para efectuar la partición. De una parte, el propio testador puede, mediante testamento o por acto *inter vivos*, disponer cómo desea que se adjudiquen los bienes que integran su caudal. Véase Cód. Civ. P.R. Art. 1009, 31 L.P.R.A. sec. 2875. En la alternativa, el testador también puede "encomendar por acto *inter vivos* o *mortis causa* para después de su muerte la simple facultad de hacer la partición a cualquiera persona que no sea uno de los coherederos". Cód. Civ. P.R. Art. 1010, 31 L.P.R.A. sec. 2876.

En ausencia de estos dos supuestos, el artículo 1011 del Código Civil contempla la partición convencional, mediante la cual, "si los herederos fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente". Cód. Civ. P.R. Art. 1011, 31 L.P.R.A. sec. 2877.

Hemos establecido que, para que la partición convencional surta efecto "se requiere el consentimiento de todos los herederos en la partición que se realice". *Colón Gutierrez v. Registrador*, 114 D.P.R. 850, 857 (1983). Véase, además José Puig Brutau, *Fundamentos de Derecho Civil* 441, T. V, Vol. III (4ta ed. rev. 1991)("[N]o cabe . . . dar validez a la partición extrajudicial

por acuerdo de la mayoría de los interesados, sino que es preciso que todos intervengan y coincidan en la aprobación".).[10]    Así, la ausencia del consentimiento de tan solo uno de los herederos, independientemente de cuán exigua sea su participación en el caudal, anulará la partición realizada. Véase *González Tejera*, *supra*, en las págs. 439-440.

Precisamente en atención a la imperiosidad del consentimiento unánime de todos los herederos para la concreción de la partición convencional, nuestro ordenamiento contempla que se recurra a la partición judicial. A esos efectos, el artículo 1012 del Código Civil establece que "[c]uando los herederos mayores de edad no se entendieren sobre el modo de hacer la partición, quedará a salvo su derecho para que lo ejerciten en la forma prevenida en los preceptos sobre procedimientos legales especiales". Cód. Civ. P.R. Art. 1012, 31 L.P.R.A. sec. 2878.[11]

---

[10] Como norma general, la validez del acuerdo de partición no está condicionada a que éste asuma determinada forma. No obstante, cuando la operación particional implica la adjudicación de derechos reales sobre un bien inmueble, es imperativo que el acuerdo se haga constar en escritura pública. Véase Cód. Civ. P.R. Art. 1232, 31 L.P.R.A. sec. 3453.

[11] Véase, además Ramón M. Roca-Sastre, Luis Roca-Sastre Muncunill y Joan Berna Xirgo, *Derecho Hipotecario* 495, T. VI (9na ed. Rev. 2007)("El principio de unanimidad en la partición por los herederos es básico en nuestro sistema positivo. En cuanto falte voluntad de uno solo de ellos . . . deberá acudirse a la partición judicial . . .".).

Por último, cabe señalar que la universalidad y la transitoriedad —características propias de la comunidad hereditaria— están íntimamente relacionadas. Ello, puesto que, hasta que la partición no se realice, el dominio de cada heredero permanecerá difuso o diluido sobre la masa hereditaria. Ese derecho difuso sobre la universalidad del caudal persistirá al margen de cuán fácilmente se pueda determinar la cuota individual que en su día le corresponderá a cada uno, realizada la partición. *Osorio v. Registrador*, 113 D.P.R. en las págs. 37-38.

## III

En este caso, los foros recurridos determinaron que, a pesar de que no todos los herederos prestaron su consentimiento a los acuerdos conducentes a adjudicar los inmuebles que formaban parte del caudal relicto, se había concretado una "división material" de la finca que había convertido a los peticionarios en extraños a la comunidad hereditaria. Esto, porque una vez tomaron posesión del solar que les correspondería en concepto de su participación, dejaron de ser parte de la misma.

Como cuestión de umbral, resulta preciso distinguir la división material de una finca de la partición convencional que preceptúa el artículo 1011 del Código Civil. Como indicamos, es únicamente mediante la partición legalmente hecha que un

miembro de la comunidad hereditaria podrá reclamar un derecho propietario exclusivo sobre los bienes que le hayan sido adjudicados. Véase Cód. Civ. P.R. Art. 1021, 31 L.P.R.A. sec. 2901. De las determinaciones de hecho y conclusiones de Derecho del Tribunal de Primera Instancia surge, manifiestamente, que no se concretó una partición, por lo que resulta imposible que un copartícipe de la comunidad hereditaria ostentara la "propiedad exclusiva" de un bien que era parte de la misma.

Como discutimos, hasta tanto no se realice la partición, los integrantes de la comunidad hereditaria sólo poseen un derecho sobre una cuota abstracta de la masa hereditaria. Nuestra jurisprudencia ha sido clara al establecer que la única manera en la que se puede disponer de un bien determinado del caudal relicto es con la anuencia de todos los integrantes de la comunidad hereditaria, lo que en este caso no ocurrió. Véase *Colón v. Registrador*, 114 D.P.R. 850 (1983). De hecho, no podía ocurrir, puesto que los trámites de segregación, al día de hoy, no se han completado.

Resulta preciso reiterar que, en el caso de la partición convencional, figura como un requisito imprescindible que exista unanimidad entre todos los herederos en torno a la adjudicación que ha de realizarse de los bienes que componen el caudal relicto. Ello, conforme a la participación de cada

uno de los integrantes de la comunidad hereditaria sobre la totalidad de la masa que la compone.[12] De los hechos reseñados por el Tribunal de Primera Instancia, se desprende que, al momento de la presentación de la acción de retracto por parte de los demandantes, los herederos aún no habían logrado cumplir con este requisito. Ante este hecho, poco importa que los peticionarios hayan realizado actos de posesión y dominio sobre determinado inmueble. Ello, según el Derecho aplicable, y tal y como lo reconoce el foro primario, no constituye una partición y, consiguientemente, no tiene el efecto de extinguir la comunidad hereditaria o convertirlos en extraños a ésta.

Aun si el señor Hernández Hernández consintió a los acuerdos iniciales concertados en 1987, el propio Tribunal de Primera Instancia reconoció que, luego de esos acuerdos, se prepararon múltiples planos adicionales enmendados que cambiaron la cabida y colindancias de los solares que serían objeto de la segregación. Incluso, de los planos preparados en el año 2005, surgió un predio adicional cuya adjudicación generó una disputa entre algunos de los herederos. Ante las exigencias de que

---

[12] Como mencionamos, en este caso tampoco se cumplió con el requisito dispuesto en al artículo 1232 del Código Civil de elevar el acuerdo a escritura pública. Asimismo, tampoco se han obtenido los permisos para la segregación de los terrenos de las agencias gubernamentales pertinentes.

el predio se le adjudicara a uno de ellos, los herederos y copartícipes "no tuvieron más remedio que ceder y aceptar para evitar más dilaciones, dar movimiento y acelerar el trámite de los planos y la segregación". *Sentencia del Tribunal de Primera Instancia*, en la pág. 9.

Igualmente, otro plano de segregación preparado con posterioridad, en diciembre de 2010, varió la colindancia adjudicada mediante los acuerdos del año 1987 al señor Hernández Hernández y redujo su cabida por 1,400 metros cuadrados. Es insostenible inferir que el consentimiento inicial del señor Hernández Hernández se extiende a acuerdos posteriores que afectaron su derecho sobre los bienes que le corresponderían una vez se celebrara la partición.

En este caso, y conforme a las particularidades que caracterizan la comunidad hereditaria, lo que adquirió el peticionario fue una participación en la totalidad del caudal relicto; esto es, una cuota abstracta y no un bien específico perteneciente a éste. Como señalamos, incluso de las advertencias contenidas en la *Escritura de cesión de derechos y acciones hereditarias* antes citadas también se desprende que los peticionarios obtenían una participación abstracta e indefinida.

Acuerdos concertados entre *algunos* de los herederos y copartícipes en torno a cómo pretenden adjudicar los bienes que componen una comunidad

hereditaria o el mero ejercicio de actos de dominio por parte de éstos sobre un bien particular del caudal relicto no tienen el efecto de extinguir la comunidad en torno a algunos de ellos. Consiguientemente, erraron los foros recurridos al desestimar la causa de acción de retracto instada por los peticionarios.

Al ser únicamente mediante el acto formal de la partición que los integrantes de una comunidad hereditaria obtienen derechos propietarios sobre bienes determinados, y dado que en este caso no se ha realizado éste, el caudal relicto continúa en estado de indivisión en cuanto a todos los que ostentan una participación abstracta sobre éste, incluyendo a los peticionarios. Así, en vista de que la comunidad hereditaria permanece indivisa, los peticionarios continúan siendo integrantes de la misma. Por lo tanto, los peticionarios pueden ejercer su derecho de retracto ante la venta de una participación abstracta sobre la totalidad de los bienes que conforman la comunidad hereditaria por parte de uno de sus integrantes.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada