ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **HÉCTOR O. FLORES DEL VALLE**<br>DEMANDANTE(S)-APELANTE(S)<br><br>V.<br><br>**ISMAEL MARTÍNEZ ROSARIO**<br>DEMANDADA(S)-APELADA(S) | **KLAN202400162** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **CAGUAS**<br><br>Caso Núm.<br>**SL2023CV00405 (705)**<br><br>Sobre:<br>Desahucio en Precario |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 27 de enero de 2025.

Comparece ante este Tribunal de Apelaciones, el señor **HÉCTOR O. FLORES DEL VALLE** (señor **FLORES DEL VALLE**) mediante *Escrito de Apelación* interpuesto el 22 de febrero de 2024. En su escrito, nos solicita que revisemos la *Sentencia* pronunciada el 20 de diciembre de [2023] por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas.[1] En dicha decisión, el foro apelado decretó la desestimación, sin perjuicio, de la *Demanda* por falta de legitimación.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

---

[1] Este dictamen judicial fue reducido a escrito el 15 de febrero de 2024; y notificado y archivado en autos el 16 de febrero de 2024. Véase Apéndice del *Escrito de Apelación*, págs. 57- 58. El señor **FLORES DEL VALLE** es hijo de **DON HÉCTOR MANUEL FLORES RODRÍGUEZ (DON HÉCTOR)**, quien falleció intestado el 29 de septiembre de 2020 conforme *Resolución* sobre declaratoria de herederos decretada el 17 de febrero de 2021. A la raíz de la muerte de su progenitor, el señor **FLORES DEL VALLE** advino a ser dueño en común proindiviso de la propiedad objeto de esta causa de acción.

- I -

El 16 de noviembre de 2023, el señor **FLORES DEL VALLE** instó una *Demanda* sobre desahucio sumario y cobro de dinero.[2] En dicha reclamación, expuso que, para el 12 de septiembre de 2008, el señor **ISMAEL MARTÍNEZ ROSARIO** (señor **MARTÍNEZ ROSARIO**) suscribió un contrato de arrendamiento con DON HÉCTOR para ocupar cierta propiedad inmueble en el municipio de San Lorenzo. Manifestó que el término del arrendamiento era de cinco (5) años efectivo desde el 1 de enero de 2009 hasta el 1 de enero de 2014 con un canon mensual de $300.00 pagaderos dentro de los primero diez (10) días del mes. Adujo que el contrato entre las partes venció por sus propios términos sin que fuera renovado. Añadió que el señor **MARTÍNEZ ROSARIO** incumplió con el contrato, adeudando la cantidad de $11,340.00 por concepto de renta dejada de percibir correspondiente al periodo desde el año 2014 hasta junio de 2022. Señaló haber remitido misiva fechada el 12 de octubre de 2023 sobre incumplimiento al señor **MARTÍNEZ ROSARIO** y le apercibió que no se entendiera como renovado el contrato de mes a mes, por lo que debía desalojar la propiedad efectivo el 31 de octubre de 2023.[3] Ese mismo día, además, presentó *Moción para que se Expida Emplazamiento y Citación*.[4] El 1 de diciembre de 2023, se presentó *Moción Reiterando que se Expida Emplazamiento y Citación*.[5]

El 4 de diciembre de 2023, se expidió el *Emplazamiento y Citación por Desahucio* dirigido al señor **MARTÍNEZ ROSARIO** y pautó audiencia para el 20 de diciembre de 2023.[6] El 19 de diciembre de 2023, el señor **MARTÍNEZ ROSARIO** presentó su *Moción Asumiendo Representación Legal* en la cual solicitó prórroga para contestar la demanda.[7] En la misma fecha, el señor **FLORES DEL VALLE** presentó su *Oposición a Prórroga*.[8] Acto seguido, en horas

---

[2] Apéndice del *Escrito de Apelación,* págs. 1- 11.
[3] El señor **MARTÍNEZ ROSARIO** hizo varios pagos para los meses de julio a octubre de 2023.
[4] Apéndice del *Escrito de Apelación,* págs. 12- 14.
[5] *Íd.,* pág. 15.
[6] *Íd.,* págs. 22- 24. El 7 de diciembre de 2023, se diligenció personalmente el *Emplazamiento y Citación por Desahucio.*
[7] Apéndice del *Escrito de Apelación,* pág. 26.
[8] *Íd.,* págs. 27- 28.

de la tarde, el señor **MARTÍNEZ ROSARIO** presentó su *Réplica a Oposición a Prórroga* en la cual razonó que debía concedérsele el aplazamiento dado que el inmueble era propiedad de una sucesión y había un subarrendamiento autorizado en el inmueble, por lo que había ausencia de parte indispensable.[9]

El 20 de diciembre de 2023, el señor **FLORES DEL VALLE** presentó una *Dúplica a: Réplica a Oposición a Prórroga*.[10] Ese día, se celebró el juicio en su fondo. Durante el desfile de prueba, el tribunal *a quo*, entre otras cosas, no admitió en evidencia el *Contrato de Arrendamiento* suscrito el 12 de septiembre de 2008, por lo que se marcó como Identificación I; y la *Resolución* sobre declaratoria de herederos se marcó como Exhibit I.[11] Escuchada la prueba, el caso quedó sometido ante la consideración del foro apelado.

El 20 de diciembre de 2023, se dictaminó la *Sentencia* apelada. Inconforme ante dicha determinación, el 22 de febrero de 2024, el señor **FLORES DEL VALLE** acudió ante este foro revisor mediante *Escrito de Apelación* señalando el(los) siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia al desestimar el caso por falta de legitimaci[ó]n de la parte apelante.
>
> Erró el Tribunal de Primera Instancia al no declarar con lugar la demanda de desahucio aun cuando se probaron los elementos de dicha causa de acción y la apelada no present[ó] evidencia alguna de sus defensas y ni siquiera contestó la demanda.
>
> Erró y abus[ó] de su discre[c]i[ó]n el Tribunal de Primera Instancia al: a) no permitir la admisión en evidencia del contrato de arrendamiento entre las partes; b) al exc[e]derse ampliamente de los 10 d[í]as que tiene para celebrar la vista en su fondo; c) al prejuzgar la controver[s]ia y exhortar a la parte apelante a desistir de su causa de acci[ó]n sin antes escuchar la prueba ante su consideraci[ó]n; d) al dictar sentencia pasados 57 [días] de celebrada la vista en su fondo.

El 29 de febrero de 2024, intimamos *Resolución* concediendo, entre otras cosas, término de treinta (30) días al señor **MARTÍNEZ ROSARIO** para presentar su alegato en oposición y se reglamentaron los procedimientos

---

[9] Apéndice del *Escrito de Apelación*, págs. 29- 31.
[10] *Íd.*, págs. 32- 44.
[11] *Íd.*, págs. 51- 56.

para encauzar la reproducción de la transcripción de la prueba oral. Luego de varios incidentes procesales, el 18 de marzo de 2024, el señor **FLORES DEL VALLE** presentó su *Moción Sometiendo Transcripción Estipulada*.[12] Después, el 19 de marzo de 2024, el señor **MARTÍNEZ ROSARIO** presentó su *Alegato en Oposición a "Escrito de Apelación"*.

Evaluado concienzudamente el expediente del caso, habiendo considerado la transcripción de la prueba oral, y contando con el beneficio de la comparecencia de todas las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A -

El desahucio sumario, reglamentado por el Código de Enjuiciamiento Civil de Puerto Rico (CEC), es un procedimiento especial cuya finalidad es recuperar la posesión de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna.[13] Tratándose de un procedimiento sumario, el Estado busca conseguir, de la forma más rápida y económicamente posible, la reivindicación del derecho a poseer y disfrutar un inmueble.[14] Ello se logra acortando términos y prescindiendo de ciertos trámites comunes al proceso ordinario, pero sin negar a la parte demandada una oportunidad real de presentar efectivamente sus defensas.[15]

Entre las personas con derecho a promover la acción de desahucio se encuentran los dueños del inmueble y cualquiera que tenga derecho a disfrutarlo.[16] La acción procede contra cualquier persona, incluyendo

---

[12] El 20 de marzo de 2024, mediante *Resolución* se acogió la transcripción de la prueba oral.
[13] Hoy vigente mediante la *Ley de Procedimientos Legales Especiales*, 32 LPRA § 2821- 2838. *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023); *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020); *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018).
[14] *Payano v. SLG Cruz Pagán,* 209 DPR 876 (2022); *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016).
[15] *Íd.*
[16] Artículo 620 del CEC, 32 LPRA § 2821.

arrendatarios, que detenten la posesión material de una finca, o que la disfruten precariamente, sin pagar canon o merced alguna.[17]

Así pues, con la presentación de la demanda de desahucio se deberá convocar a las partes para el juicio. El cual tendrá lugar dentro de los diez (10) días siguientes a la presentación de la reclamación.[18] La parte demandada deberá presentar en su contestación a la demanda cualquier defensa que le asista.[19] Ahora bien, la prueba documental con la que cuenten la parte demandante y la parte demandada deberá presentarse el día del juicio.[20] Tras el desfile de prueba, el tribunal deberá dictar sentencia dentro de un término mandatorio no mayor de diez (10) días.[21]

Por otra parte, el Artículo 628 del CEC instituye que las partes afectadas por una sentencia en un pleito de desahucio podrán apelar dentro de un término de cinco (5) días, contados desde la fecha de archivo en autos de la notificación de la *Sentencia*, ello por las partes perjudicadas por la misma o sus abogados".[22]

Dentro del marco procesal sumario de la *Ley de Desahucio*, el sano discernimiento judicial será la guía para prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones.[23] Por consiguiente, el juzgador de los hechos tendrá total discreción de convertir el caso ante su consideración de uno sumario a uno ordinario, según los hechos específicos y particulares de cada caso. Ahora bien, "la necesidad de que ocasionalmente el procedimiento sumario de desahucio se convierta en uno ordinario, no puede llevarnos a configurar una regla automática".[24]

---

[17] Artículo 621 del CEC, 32 LPRA § 2822.
[18] Artículo 623 del CEC, 32 LPRA § 2824. El CEC también se refiere al juicio como "la comparecencia".
[19] Artículo 625 del CEC, 32 LPRA § 2826.
[20] Artículo 626 del CEC, 32 LPRA § 2827.
[21] Artículo 625 del CEC, *supra*.
[22] Artículos 628 y 629 del CEC, 32 LPRA § 2830- 2831.
[23] *Más et al. v. Borinquen Sugar Co.,* 18 DPR 304, 311– 312 (1912).
[24] *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 241 (1992).

## - B -

La sucesión por causa de muerte es la transmisión de todos los derechos y obligaciones del causante que no se extinguen por su muerte.[25] Por ende, el heredero es la persona que sucede al causante en dichos derechos u obligaciones.[26]

Es doctrina reiterada en el derecho sucesorio que los bienes del caudal hereditario pertenecen proindiviso a los miembros de la comunidad hereditaria.[27] Existe una comunidad hereditaria cuando concurre a la sucesión una pluralidad de personas con derechos en la herencia expresados en cuotas abstractas.[28] Nuestro Mayor Foro ha expresado que la comunidad hereditaria carece de personalidad jurídica.[29] Ante ello, "no es una entidad legal independiente de los herederos".

Como norma general, en cuanto a pleitos que afecten el interés de una sucesión, será necesario incluir a todos sus miembros y expresar individualmente sus nombres, dado que las sucesiones son una entidad distinta y separada a la de sus componentes.[30] Es decir, cada uno de los herederos son partes indispensables en el pleito y en ausencia de ellos, el tribunal carecerá de jurisdicción para emitir un decreto judicial.

En cambio, cada heredero puede disponer de su cuota abstracta sin que sea necesario el consentimiento de los demás coherederos. Empero, solo mediante el consentimiento de todos los herederos pueden enajenarse bienes específicos pertenecientes a la comunidad.[31]

Primordialmente, "la comunidad hereditaria responde al carácter universal atribuido directamente a la sucesión, pues en ella, el heredero representa la personalidad jurídica del causante actuando sobre la masa total

---

[25] Art. 1546 del Código Civil, 31 LPRA sec. § 10911.

[26] *SLG Lorenzo-Lorenzo v. Morales Nieves*, 197 DPR 260, 296 (2017).

[27] *Cruz Pérez v Roldan Rodríguez et al.*, 206 DPR 261 (2021); *Soc. de Gananciales v. Registrador*, 151 DPR 315 (2000).

[28] Art. 1599 del Código Civil, 31 LPRA sec. §1107.

[29] Art. 1600 del Código Civil, 31 LPRA sec. §11072; *Vilanova et al. v. Vilanova et al.*, 184 DPR 824, 843 (2012).

[30] *Vilanova et al. v. Vilanova et al., supra*, pág. 843; *Pino Development Corp. v. Registrador*, 133 DPR 373, 388 (1993*); Echevarría Jiménez v. Sucn. Pérez Meri*, 123 DPR 664, 687 (1989*).*

[31] Art. 1604 del Código Civil § 31 LPRA sec. 11076; *Kogan v. Registrador*, 125 DPR 636 (1990).

de bienes y derechos, hasta que las operaciones particionales pongan término a la indivisión".[32] Como se trata de una comunidad forzosa de bienes y derechos, cualesquiera de los herederos o parte de los mismos, puede comparecer en juicio para defender los derechos de la comunidad, y si sale victorioso, el triunfo aprovecha a todos los copropietarios.[33] Conforme a ello, cualquier heredero puede comparecer en juicio para ejercitar o defender los asuntos que afecten los derechos de una comunidad en representación de los demás.

### - C -

El concepto de *legitimación* se ha incorporado en nuestro ordenamiento procesal mediante la Regla 15 de las de Procedimiento Civil de 2009.[34] La cual dispone que, "todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama".[35] Ahora bien, la aludida Regla 15.1 instaura una excepción a la norma general al expresar: "[n]o se desestimará un pleito por razón de no tramitarse a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la radicación del pleito, se una al mismo, o se sustituya en lugar del promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiere incoado por la persona con derecho".[36]

Nuestro más Alto Foro, ha expresado que el propósito de esta norma procesal se enfatiza en:

> "[E]vitar la pérdida de un derecho y la comisión de una injusticia, permitiéndose que, mediante enmienda, se ratifique o se sustituya al titular del derecho y que la enmienda se retrotraiga al inicio del pleito, aun cuando el término prescriptivo ya hubiese vencido al momento de presentarse la enmienda. Esta disposición es cónsona con la política pública que consistentemente hemos adoptado de liberalidad en la interpretación y aplicación de las reglas y normas procesales a favor de que los casos se diluciden y resuelvan en los méritos".[37]

---

[32] *Flores v. Rodríguez*, 77 DPR 720, 725 (1954).
[33] *Flores v. Rodríguez, supra*, pág.726.
[34] Regla 15 de las de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[35] *Íd.*
[36] Regla 15.1 de las de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[37] *Allende Pérez v. García*, 150 DPR 892, 905-906 (2000).

Sustancialmente, predica que, no se desestimará la acción judicial, hasta que se hayan evaluado todas las medidas razonables para la tramitación y adjudicación del pleito.

- **D** -

La Regla 16.1 de las de Procedimiento Civil de 2009 implanta el mecanismo de *parte indispensable*.[38] En consonancia con dicha regla, la parte demandante deberá incluir en su demanda a todas las partes que sean indispensables en la acción judicial.

Nuestro ordenamiento procesal ha definido *parte indispensable* como todas "aquellas personas que tengan un interés común sin cuya presencia no puede adjudicarse la controversia".[39] En este contexto, ha interpretado el significado de "*interés común*" como:[40]

> "[n]o se trata de cualquier interés sobre un pleito, sino de uno de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos a esa parte...tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro...conviene destacar que [l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso en individual. Exige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad...lo fundamental es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes sin afectar los intereses de la parte ausente".[41]

La acumulación de *parte indispensable* es una exigencia del debido proceso de ley dado que pretende (1) garantizar la protección constitucional de que una persona no sea privada de la libertad y propiedad sin un debido proceso de ley; y (2) la necesidad de que el decreto judicial emitido sea completo.[42]

Ante ello, nuestro Tribunal Supremo ha expresado que "la falta de parte indispensable en un pleito es un interés tan fundamental, que

---

[38] Regla 16.1 de las de Procedimiento Civil de 2009 (32 LPRA Ap. V).

[39] *Payano v. SLG Cruz-Pagán, supra, pág.* 888, *RPR & BJJ, Ex parte,* 207 DPR 389, 407 (2021), *Deliz et als. v. Igartúa et als.*, 158 DPR 403,432 (2003).

[40] Regla 16.1 de las de Procedimiento Civil de 2009*, supra.*

.[41] *RPR & BJJ Ex Parte, supra*, págs.407- 409, *Romero v. S.L.G. Reyes*, 164 DPR 721, 732 (2005).

[42] *Payano v. SLG Cruz-Pagán, supra,* pág. 889, *López García v. López García*, 200 DPR 50, 63 (2018).

constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. Incluso, los foros apelativos, si así lo entienden, pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, debido a que esta incide sobre la jurisdicción del tribunal" [43]

- III -

El señor **FLORES DEL VALLE** acudió ante este tribunal intermedio solicitando nuestra intervención para revisar la *Sentencia* determinada el 20 de diciembre de [2023] mediante la cual se desestimó, sin perjuicio, la *Demanda* sobre desahucio por falta de legitimación. Expuso que el foro primario incidió: (i) al desestimar el caso por falta de legitimación; (ii) al no declarar con lugar la demanda de desahucio aun cuando se probaron los elementos de dicha causa de acción y el señor **MARTÍNEZ ROSARIO** no presentó evidencia alguna de sus defensas y ni siquiera contestó la demanda; y (iii) a) no permitir la admisión en evidencia del contrato de arrendamiento entre las partes; b) al excederse ampliamente de los diez (10) días que se tiene para celebrar la vista en su fondo; c) al prejuzgar la controversia y exhortar al señor **FLORES DEL VALLE** a desistir de su causa de acción sin antes escuchar la prueba ante su consideración; d) al dictar sentencia pasado cincuenta y siete (57) días de celebrada la audiencia en su fondo. La totalidad de los errores señalados van dirigidos a impugnar la legalidad del dictamen. Por encontrarse intrínsecamente relacionados, discutiremos los errores señalados de forma conjunta.

No surge del expediente que el señor **MARTÍNEZ ROSARIO** presentara su contestación a la *Demanda* o evidencia alguna que sustentara sus alegadas defensas. Empero, el tribunal primario celebró la audiencia y escuchó el testimonio del señor **FLORES DEL VALLE.** Como parte de la prueba documental, se presentó el *Contrato de Arrendamiento* marcado como

---

[43] *López Gracia v. López García, supra,* pág. 64; *Watchtower Bible et al v. Mún. Dorado I,* 192 DPR 73, 118 (2014); *Pérez Rosa v. Morales Rosado,* 172 DPR 216, 223 (2007).

Identificación I y la *Resolución* intimada el 17 de febrero de 2021 marcada como Exhibit I.[44]

En este caso, la *Demanda* se instó el 16 de noviembre de 2023 y el juicio en su fondo se celebró el 20 de diciembre de 2023. Es norma reiterada por el CEC, que el juicio se deberá celebrar dentro de los diez (10) días siguientes a que se presente en la reclamación. En estas circunstancias, transcurrieron treinta y cuatro (34) días desde la radicación de la *Demanda* hasta la celebración del juicio en su fondo. "Ahora bien, aunque el estatuto dispone que el señalamiento de la primera comparecencia se hará dentro de diez (10) días, el tribunal no está privado de ejercitar su discreción para fijar dicho señalamiento o para prorrogarlo, cuando las circunstancias así lo exijan. Es menester mencionar que, la facultad discrecional es inherente de los tribunales, pudiendo surgir de causas de enfermedad, muerte, ausencia, incapacidad u otras semejantes, que hagan indispensable el señalamiento para una fecha posterior".[45] Dada estas circunstancias, no incidió el foro primario al celebrar la audiencia el 20 de diciembre de 2023.

Es menester señalar que la *Sentencia* fue reducida a escrito el 15 de febrero de 2024 y notificada el 16 de febrero de 2024. Como reseñáramos, el CEC en los casos sobre desahucio dispuso un **término mandatorio** de diez (10) días. En consecuencia, luego del desfile de la prueba, transcurrieron veinticinco (25) días. Razonamos que el tribunal de instancia abusó de su discreción al dictar *Sentencia* pasado el término mandatorio de diez (10) días.

Se ha reconocido que todos los miembros de una sucesión son partes indispensables cuando hay un pleito que afecta un bien de la comunidad hereditaria. Más, cualesquiera de los herederos o parte de estos, puede comparecer en un juicio para salvaguardar los derechos de la comunidad hereditaria, y si prevalece, el logro beneficia a todos. Ante ello, colegimos que

---

[44] Ante la negativa del tribunal de permitir entrar al contenido del *Contrato de Arrendamiento* sin haberse realizado objeción alguna y luego presentarse una objeción sin fundamentar la misma, se hizo oferta de prueba. Véase la *Transcripción de la Prueba Oral*, pág. 43, línea 13 hasta pág. 48 líneas 1.

[45] Artículo 623 del CEC, 32 LPRA § 2824. *Mas et al. v. Borinquen Sugar Co., supra.*

el señor **FLORES DEL VALLE** ostenta *legitimación activa* para reclamar por el alegado incumplimiento del contrato de arrendamiento suscrito para el año 2008 entre DON HÉCTOR, su tío, y el señor **MARTÍNEZ ROSARIO,** así como para comparecer ante el tribunal con el fin de defender los derechos de la comunidad hereditaria concerniente a dicha transacción.

El día del juicio y ante los planteamientos legales, el foro apelado debió indagar todas las alternativas disponibles; convertir el caso a un procedimiento ordinario; conceder un plazo razonable para incluir a los herederos de DON HÉCTOR y su tío o estos ratificarán la reclamación. El tribunal primario solamente sugirió la desestimación, sin perjuicio.[46] Ello pese a que señor **FLORES DEL VALLE** adujo que el tribunal *motu proprio* tenía la facultad para la conversión del caso. Entendemos que incidió al concluir que el señor **FLORES DEL VALLE** carecía de *legitimación activa*.

Es imperativo apuntalar que, la política pública, favorece la liberalidad de la interpretación y aplicación de las normas procesales a favor de que los casos se diluciden y resuelvan en los méritos. Por tanto, en consideración de las particularidades específicas de este caso, concluimos que incidió el foro apelado al desestimar, sin perjuicio, la causa de acción señor **FLORES DEL VALLE** por falta de legitimación.

- IV -

Por los fundamentos antes expuestos, ***revocamos*** la *Sentencia* pronunciada el 20 de diciembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Caguas; ***ordenamos*** la conversión del procedimiento al trámite ordinario; se conceda un plazo razonable para incluir a los herederos de **DON HÉCTOR** y su tío o estos ratifiquen la reclamación; o se expidan emplazamientos para su diligenciamiento en conformidad con la Regla 4 de las de Procedimiento Civil de 2009.

_____

[46] Véase la *Transcripción de la Prueba Oral*, pág. 30, líneas 17- 21; pág. 31, líneas 19- 20; y pág. 36, líneas 15- 17.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Lebrón Nieves concurre con el resultado sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones